# EXHIBIT B

CAUSE NO. DC-16-01648

Tonya Pointer



| | | |
|---|---|---|
| ANDRE GUARDADO, Individually and as | § | IN THE DISTRICT COURT OF |
| Representative for the Estate of ALEXIS RENEE | § | |
| GUARDADO, Deceased, | § | |
| And as Representative of, or on behalf of, | § | |
| RACHEL ANN SAUNDERS, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| EDMOND JOE PALMORE, | § | |
| P.A.M. TRANSPORT, INC. and | § | |
| P.A.M. TRANSPORTATION SERVICES, INC., | § | |
| | § | |
| Defendants | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND DISCOVERY REQUESTS

TO THE HONORABLE JUDGE OF SAID COURT:

ANDRE GUARDADO, Individually, And as Representative of the Estate of ALEXIS RENEE GUARDADO, deceased, and as Representative of, or on behalf of, RACHEL ANN SAUNDERS complain of EDMOND JOE PALMORE, P.A.M. TRANSPORT, INC. and P.A.M. TRANSPORTATION SERVICES, INC., Defendants, because:

1. Plaintiffs elect to proceed under the Level 3 Discovery Control Plan.

2. Plaintiffs ANDRE GUARDADO, Individually, And as Representative of the Estate of ALEXIS RENEE GUARDADO, deceased, and as Representative of, or on behalf of, RACHEL ANN SAUNDERS are residents of Dallas County, Texas.

3. Defendant, **EDMOND JOE PALMORE**, is an individual resident of the State of Alabama and may be served with process at **507 Draper St., Piedmont, AL 36272**.

4. Defendant, **P.A.M. TRANSPORT, INC.**, is an Arkansas corporation doing business in the State of Texas. Service of process may be obtained by serving its registered agent, **Daniel Cushman, Hwy 412 West, Tontitown, Arkansas 72770**.

5. Defendant, **P.A.M. TRANSPORTATION SERVICES, INC.**, is a Delaware corporation doing business in the State of Texas. Service of process may be obtained by serving its registered agent, **Daniel Cushman, Hwy 412 West, Tontitown, Arkansas 72770**.

Plaintiffs' Original Petition and Discovery Requests -                                                                                1

6. On or about January 30, 2016, at or about 12:45, a.m., ALEXIS RENEE GUARDADO was driving her 2001, Ford Mustang, westbound, in the outside lane, of Interstate 30, near the NW 7th St. overpass, in Grand Prairie, Dallas County, Texas. Her car was traveling at a slow rate of speed, with her hazard lights on, due to one or more flat tires. Defendant, EDMOND JOE PALMORE ("PALMORE"), driving his 2013 International Prostar tractor-trailer rig, failed to safely change lanes and collided with ALEXIS RENEE GUARDADO's vehicle, causing her vehicle to slam into the shoulder (or "jersey") wall. The two vehicles became stuck together while grinding along the shoulder wall. PALMORE's vehicle caught fire. The fire spread to both vehicles and completely destroyed Plaintiffs and Defendants' vehicles. ALEXIS RENEE GUARDADO died at the scene, as a result of this collision and fire.

7. EDMOND JOE PALMORE violated his duty to exercise ordinary care, in the operation of his tractor-trailer rig, and was negligent, by: duty of ordinary care and were negligent in:

a. failing to keep a proper lookout;
b. failing to timely apply his brakes;
c. failing to control his speed;
d. failing to avoid the collision;
e. failing to yield the right of way to ALEXIS RENEE GUARDADO;
f. failing to safely change lanes;
g. failing to take proper evasive action;
h. failing to heed the warning of ALEXIS RENEE GUARDADO's hazard lights;
i. driving while fatigued, asleep or otherwise impaired;
j. failing to operate his vehicle within the bounds of a single lane;
k. failing to exercise extraordinary care in the operation of his tractor-trailer rig after dark; and/or
l. such other acts or omissions as may be revealed in discovery.

8. Singularly or collectively, EDMOND JOE PALMORE's acts or omissions, listed above, proximately caused the occurrence, death of ALEXIS RENEE GUARDADO, and resulting damages to Plaintiffs that made the basis of this suit. One or more of the actions listed above also constituted gross negligence for which EDMOND JOE PALMORE is responsible to Plaintiffs for exemplary damages in an amount within the jurisdictional limits of this Court.

9. At the time of this collision, EDMOND JOE PALMORE was acting in the course and scope of his employment for one or more "P.A.M." Defendants who also owned, operated and/or maintained the subject tractor-trailer rig. One or more "P.A.M. Defendants is responsible,

for the actions of EDMOND JOE PALMORE either as his employer or statutory employer, as contemplated by the both the Federal Motor Carrier Safety Responsibility Act (FMCSR) and Texas statute. An employer, as defined by FMSCR, "means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business...." 49 C.F.R. § 390.5 (1997). Texas has incorporated, by reference, Parts 382, 385, 386, 390-393, and 395-395 of the Federal Motor Carrier Safety Regulations. *See* 37 Tex. Admin. Code § 3.62(a) (1996) ("The director of the Texas Department of Public Safety incorporates, by reference, the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations, Parts 382, 385, 386, 390-393, and 395-397 including amendments and interpretations thereto." One or more P.A.M. Defendants are thereby vicariously liable for the negligent actions of Defendant EDMOND JOE PALMORE. *Morris v. JTM Materials*, 78 S.W.3d 28 (Tex. App-Fort Worth 2002, no pet.).

10. Additionally, EDMOND JOE PALMORE was negligent per-se, in the operation of his tractor-trailer rig, and violated one or more of the following Texas Transportation Code sections, by:

a. failing to keep the tractor-trailer with utility trailer(s) within proper lane of traffic - §545.060;

b. failing to obey the roadway pavement markings regulating the movement of traffic - §545.060;

c. changing lanes when unsafe to do so - §545.060; and/or

d. such other violations of the Transportation Code as may be revealed in discovery.

11. Singularly or collectively, EDMOND JOE PALMORE's acts or omissions, listed above, proximately caused the occurrence, death to ALEXIS RENEE GUARDADO and resulting damages to Plaintiffs. One or more of the actions listed above also constituted gross negligence for which EDMOND JOE PALMORE is responsible to Plaintiffs for exemplary damages in an amount within the jurisdictional limits of this Court.

12. Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., owned the tractor-trailer rig operated by EDMOND JOE PALMORE. EDMOND JOE PALMORE was a permissive user of that tractor-trailer rig.

13. Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., prior to, and at the time of, the subject collision, entrusted its tractor-trailer rig to EDMOND JOE PALMORE, for the purpose of them engaging in a commercial trucking operation and him operating it over the roads and highways of the State of Texas. At such time,

EDMOND JOE PALMORE was incompetent and/or unfit to safely operate the tractor-trailer rig. Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., knew or should have known, in the exercise of ordinary care, that EDMOND JOE PALMORE was an incompetent and/or unfit driver and would create an unreasonable risk of danger to persons and property. Defendants were negligent in entrusting their tractor-trailer rig to EDMOND JOE PALMORE. Such negligence was a proximate cause of the occurrence, the death of ALEXIS RENEE GUARDADO, and resulting damages to Plaintiffs.

14. On the occasion in question, Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., were negligent, in the operation of their commercial trucking enterprise, by:

a. failing to use reasonable care in recruiting or hiring their drivers, including EDMOND JOE PALMORE;

b. failing to use reasonable care in the discipline, re-training and/or termination of incompetent, careless, or reckless employees, including EDMOND JOE PALMORE;

c. failing to use reasonable care in training employees, including EDMOND JOE PALMORE; and/or

d. failing to use reasonable care in monitoring and supervising the conduct of employees, including EDMOND JOE PALMORE.

15. Each of the above stated acts and/or omissions, singularly or collectively, constitute a proximate cause of the occurrence, death of ALEXIS RENEE GUARDADO, and resulting damages to Plaintiffs.

16. At the time of the incident that made the basis of this suit, through one or more of his acts or omissions identified herein, EDMOND JOE PALMORE was operating his tractor-trailer rig with reckless disregard of the rights of others, resulting from a conscious indifference to the rights, welfare and safety of other motorists, and/or with actual knowledge of a substantial risk of serious bodily injury or death. Such acts or omissions constitute gross negligence for which Plaintiffs are entitled to recover exemplary damages.

17. At the time of the incident, through one or more of the acts or omissions identified herein, Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., were operating a commercial trucking operation in violation of one or more of

the Federal Motor Carrier Safety Regulations. Such actions constitute negligence and/or negligence per se, proximately causing the occurrence, death of ALEXIS RENEE GUARDADO and resulting damages to Plaintiffs.

18. At the time of the incident, through one or more of his acts or omissions identified herein, Defendants, P.A.M. TRANSPORT, INC. and/or P.A.M. TRANSPORTATION SERVICES, INC., were operating a commercial trucking operation with reckless disregard of the rights of others, resulting from a conscious indifference to the rights, welfare and safety of other motorists, and/or with actual knowledge of a substantial risk of serious bodily injury or death. Such acts or omissions constitute gross negligence for which Plaintiffs are entitled to recover exemplary damages.

19. This action is maintained as a wrongful death claim, for all statutory beneficiaries, and a survival action on behalf of the estate of ALEXIS RENEE GUARDADO, deceased, for damages they are entitled to recover as a result of ALEXIS RENEE GUARDADO's death, under the provisions of the Texas Civil Practice and Remedies Code, Section 71.002 and 71.021. The surviving beneficiaries of ALEXIS RENEE GUARDADO, deceased, are:

| | | |
|---|---|---|
| 1. | ANDRE GUARDADO - | Father |
| 2. | RACHEL ANN SAUNDERS - | Mother |
| | (who may also be known as Rachel Ann Saunders-Priggre) | |

20. As a proximate result of Defendants' negligence, and the wrongful death of ALEXIS RENEE GUARDADO, Plaintiffs have suffered severe mental anguish, the loss of companionship and society and, in all probability, will permanently suffer these damages in to the future.

21. As a proximate result of Defendants' negligence, and the wrongful death of ALEXIS RENEE GUARDADO, Plaintiffs seek recovery for ALEXIS RENEE GUARDADO's conscious pain and suffering, mental anguish, and funeral-related expenses.

22. As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek monetary relief, the maximum of which is well over $1,000,000.00. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Plaintiffs seek pre-judgment and post-judgment interest at the highest legal rate.

23.    WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer and that upon a final trial, judgment be entered for Plaintiffs against Defendants, jointly and/or severally, for the actual and/or exemplary damages alleged, together with pre-judgment and post-judgment interest allowed by law, costs of court, and such other relief to which Plaintiffs may be entitled. Plaintiffs reserve the right to amend this Petition. Plaintiffs request a trial by jury.

## PLAINTIFFS' REQUEST FOR PRESERVATION AND INSPECTION

**Plaintiffs, pursuant to Rule 196.2, Texas Rules of Civil Procedure, request that the Defendants' entire tractor trailer rig, and any component parts, driven by EDMOND JOE PALMORE and involved in the subject collision be preserved. Plaintiffs further request that not later than 60 days after service of this Petition and Request, upon Defendants, that Plaintiffs be permitted to inspect and photograph the subject Defendants' tractor-trailer rig identified herein. Plaintiffs request that all Defendants preserve all relevant evidence.**

## PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANTS

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants, EDMOND JOE PALMORE, P.A.M. TRANSPORT, INC. and P.A.M. TRANSPORTATION SERVICES, INC., are requested to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2 (a), (b), (c), (d), (e), (f), (g), (h), (i), (j) (k) and (l).

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC.

Pursuant to Rule 196, Texas Rules of Civil Procedure, Plaintiffs serve the following Request for Production to P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC. (hereinafter "Defendants"). These requests are being served upon the Defendants along with Plaintiffs' Original Petition. Defendants' responses shall be served upon Plaintiffs' counsel on or before the expiration of fifty (50) days after the service of said discovery requests.

The Requests for Production are to be answered separately and fully in writing. You are

Plaintiffs' Original Petition and Discovery Requests -                                                                         6

further advised that you are under a duty to seasonably supplement you answers and/or responses

in accordance with the Texas Rules of Civil Procedure.

**YOU ARE INSTRUCTED THAT IF ANY INFORMATION RESPONSIVE TO THESE REQUESTS IS STORED OR MAINTAINED BY YOU OR ANYONE FROM WHOM YOU HAVE A RIGHT OR ACCESS TO THE INFORMATION, ELECTRONICALLY OR MAGNETICALLY, YOU MUST PRODUCE THIS INFORMATION TO USE ON A DISC FORMATTED FOR MICROSOFT WORD.**

### NOTICE

**PURSUANT TO RULE 193.7 OF THE TEXAS RULES OF CIVIL PROCEDURE, ANY DOCUMENTS PRODUCED BY YOU MAY BE USED IN ANY PRETRIAL PROCEEDING OR AT TRIAL. YOUR PRODUCTION OF ANY DOCUMETNS, IN RESPONSE TO ANY REQUEST HEREIN, AUTHENTICATES THE DOCUMENT(S) FOR USE AGAINST YOU IN ANY PRETRIAL PROCEEDING OR AT TRIAL UNLESS, WITHIN TEN (10) DAYS AFTER OUR RECEIPT OF YOUR RESPONSES (INCLUDING SUPPLEMENTAL OR AMENDED RESPONSES) YOU OBJECT TO THE AUTHENTICITY OF ANY DOCUMENTS PRODUCED, OR ANY PART THEREOF, STATING THE SPECIFIC BASIS FOR THE OBJECTION.**

### DEFINITIONS AND INSTRUCTIONS

1.      "DOCUMENTS." When the word "document(s)" or "documentation" is used in these discovery requests, it means any written, typed, printed, graphic or photographic matter, or sound reproductions however produced or reproduced, including copies of computer or data processing, input or output in whatever form, including electronic and magnetic data. Without limiting the generality of the foregoing, all letters, telegrams, cables, wires, notes, memoranda, accounts, ledgers, books, statements, drafts, transcripts, agreements, contracts, policies, minutes, records, diaries, journals, logs, manuals, calendars, governmental forms, computer or data processing input or output, maps, plats, moving or still pictures, diagrams, plans, drawings, specifications, measurements, microfilm, written statements or reports, e-mail reduced to hard copy, samples or other physical objects of whatever nature now or formerly in the possession, custody or control of the party to whom these Discovery Requests are directed.

> (a) The terms "writing" or "written" are intended to include, but not necessarily be limited to the following; hand writing, typewriting, computer printouts, printing, photographing, e-mail reduced to hard copy, and every other means of recording upon any tangible thing or any form of communication, including letters, words, pictures, sounds or symbols or combinations thereof; and it further includes any oral communications later reduced to writing or confirmed by a letter.
>
> (b) Whenever the identification of documents or objects is called for in these discovery requests, the party to whom these discovery requests are directed,

Plaintiffs' Original Petition and Discovery Requests -                                              7

shall provide the date of the document, model and serial number of the object, if any, the brand of the object, name of manufacturer and date of manufacture. In lieu of identification as stated above, Defendant may produce for inspection and copying such documents or objects and/or manuals identifying such objects.

(c) With regard to documents requested to be produced, please produce the original of said documents for inspection and copying or provide complete and clear legible copies of same with immediate opportunity to review the originals.

(d) If the party to whom these interrogatories and requests are directed contend that the content of a document of the answer to an interrogatory is protected from disclosure by virtue or a privilege, or if the party objects to such discovery on any other grounds, it is intended and requested that the party shall, nevertheless, with respect to such document or answer requested, provide a description thereof, including:

(1) A statement of the privilege or objection whereby they contend that such discovery is protected from disclosure;

(2) Each every fact upon which they rely to support such claim of privilege or objection;

(3) The type of document (e.g., letter, memorandum, telegraph, telefax, note);

(4) The date of each such document or writing;

(5) The author of each such document or writing;

(6) The person or persons to whom each such writing or document was directed;

(7) The person or persons to whom each such writing or document was supplied; and

(8) The general subject matter of each such document or writing.

2. "IDENTITY" "IDENTIFY" or "IDENTIFICATION";

(a) When used in reference to a natural person, "identity" "identify" or "identification" means to state his or her full name and present or last known address, present employer (if employed by the party to who this Discovery is directed, then identify the particular organization for whom he or she worked), present employer, specifying in each instance the title or position and the dates so held.

(b) When used with respect to a document, "identity", identify" or "identification" means to state the date, subject and substance, author all recipients, type of document (e.g., letter, telegraph, memorandum, computer printout, sound reproduction, chart, etc.), its present location and the identity

> of its present custodian. This shall include documents with respect to which a privilege is or may be claimed, if such document was, but no longer is, in your possession or subject to your control, state whether it is (1) missing or lost; (2) has been destroyed; (3) has been transferred voluntarily to others; or (4) has been otherwise disposed of. In each such instance explain the circumstances surrounding an authorization for such disposition.
>
> (c) When used with respect to an occasion, event, meeting or conversation, "identity", "identify" or "identification" means to state the date, place, duration and persons attending or participating.

3.      "Person" or "persons" includes natural persons, including agents, servants and/or employees of this Defendant, firms, partnerships, associations, joint ventures, corporation and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

4.      "YOU" or " YOUR" means P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC. and shall include any and all officers, directors, employees, servants, agents, contract laborers, and any Parent company, division, subsidiary, assumed name, business unit, successor entity or any entity under the direction or control of P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC., and/or its, their successors.

5.      "ACCIDENT," "THE INCIDENT" or "THE OCCURRENCE IN QUESTION" means the incident made the basis of this lawsuit that occurred on or about January 30, 2016 as more fully set out in PLAINTIFFS' ORIGINAL PETITION.

6.      "THIS SUIT," "THIS LAWSUIT," or "THE LAWSUIT" shall mean the lawsuit referenced in the above-entitled and numbered cause.

In the event that your answer to any discovery request is "not applicable" or any similar phrase or answer, please explain in detail why that discovery request is not applicable.

In the event that your answer to any discovery request is "don't know" or "unknown" or any similar phrase or answer, please explain in detail all efforts made by your or your attorneys or representatives to obtain the response to that discovery request.

When a discovery request asks that your or your attorney provide information concerning what witness may testify about, that request is intended to elicit a summary of any and all information that any witness may have provided to your regardless of whether they may so testify at trial.

These discovery requests should be deemed continuing in nature and you are requested to

Plaintiffs' Original Petition and Discovery Requests -                                                                 9

update your responses periodically to reflect any information obtained after the discovery requests are initially responded to, to include all information up to, and including, the date of trial in this action, in accordance with the Texas Rules of Civil Procedure.

Unless otherwise stated, answers to these Requests for Production shall be given for the time period ending with the date answers or responses hereto are served. To the extent that such answers or responses hereto are served. To the extent that such answers or responses may be enlarged, diminished or otherwise modified by information acquired or discovered by you subsequent to service of initial answers or responses, you are directed to promptly thereafter serve supplemental answers or responses reflecting such information.

You are further notified that your answers to these Requests for Production may be offered in evidence at the trial of this case. You are further advised that your answers or responses to these requests must be supplemented (not less than 30 days prior to the beginning of the trial) when you obtain information upon the basis of which:

(1) You know an answer or response was incorrect when made or incomplete when made;

(2) You know that the answer or response, though correct when made, is no longer true and complete, and the circumstances are such that to fail to amend your answers ore responses would be, in substance, misleading; or

(3) If the party expects to call an expert witness whose identity and subject matter of such witness' testimony has not been previously disclosed in response to an appropriate discovery request, such answer must be supplemented and/or amended to include the name, address and telephone number of the expert witness and the substance of the expert witness' expected testimony. This should be done as soon as practical, but in no event less than thirty (30) says prior to the beginning of trial except for good cause granted by leave of Court.

7. Driver: As used herein, the term "Driver or Drivers" means any person employed, or contracted for or with, by Defendant, including EDMOND JOE PALMORE and persons known as co-drivers, independent contractors, owner operators or trip lessors and includes persons furnished to the Defendant and drivers by any other person or organization who perform driving services for or on behalf of P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC.

8. Complete and Clearly Readable Copies: As used herein, the terms "Complete and clearly readable copies" means copies that are not reduced in size, unless the document being copied exceeds the size of normally available copy paper, and is a complete copy of the document clearly readable to the average person. Plaintiff's request that each document that is reproduced by copy methods to satisfy this request, be produced on one page (one document per page), separate and apart from all other documents produced. If the copies reproduced to satisfy

any request herein are not clearly readable, Plaintiff's request the originals be produced for purposes of viewing and copying by the Plaintiff's. The originals will be timely returned to the producing defendant.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined hereinabove is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS, P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC.

1. The entire personnel file and its contents and/or any other personnel records of EDMOND JOE PALMORE, including, but not limited to, evaluations, testing, qualifications, driving records, pre-employment physicals, follow-up physicals, applications for employment, employment agreements and all other records, including records from other entities in their entirety.

RESPONSE:

2. Any and all documents, writings, complaint forms, reprimand forms or any other types of documents that reflect any complaints or reprimands relating to EDMOND JOE PALMORE, at any time.

RESPONSE:

3. Any and all documents, books, records and papers in the possession of the Defendant pertaining to the physical and mental health of EDMOND JOE PALMORE, including, but not limited to, any long-form physical examination, and/or D.O.T. physicals, done for any purpose in accordance with Section 391.41 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

4. Any and all documents which reflect, in whole or in part, any alcohol or drug screening performed on EDMOND JOE PALMORE, at any time in the past.

RESPONSE:

5. Any and all notices of convictions, if any, regarding EDMOND JOE PALMORE, that Defendant is expected and required to prepare and maintain pursuant to Section 383.31 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

6.     Any and all notices of driver's license suspensions, if any, regarding EDMOND JOE PALMORE, pursuant to Section 383.33 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

7.     Any and all employment information collected or retrieved by Defendant and/or provided to Defendant by EDMOND JOE PALMORE, pursuant to Section 383.35 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

8.     Any and all contents of the "driver qualification file" for EDMOND JOE PALMORE, pursuant to Section 391.51 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

9.     Any and all pre and post-employment tests, quizzes, evaluations and/or examinations that were given to or performed on EDMOND JOE PALMORE throughout his entire employment with Defendant.

RESPONSE:

10.    Any and all documents reflecting, in whole or in part, any pre-employment testing, post-employment testing, quizzes, evaluations or examinations that were given to or performed on any of Defendant's employees within the past five (5) years. The term "employee" in this request means any person employed in the capacity of a truck driver for Defendant.

RESPONSE:

11.    Any and all time cards, time logs, driver's daily logs and/or any other type of logs for EDMOND JOE PALMORE for the period December 30, 2015 to January 30, 2016.

RESPONSE:

12.    Any and all documents reflecting compensation paid to EDMOND JOE PALMORE, by defendant for expense advanced in pursuit of its business for the period December 30, 2015 to January 30, 2016.

RESPONSE:

13.    Any and all documents reflecting compensation paid to EDMOND JOE PALMORE for the period December 30, 2015 to January 30, 2016.

RESPONSE:

14. Any and all operator and/or commercial driver's licenses in the possession of Defendant issued at any time by any licensing authority permitting EDMOND JOE PALMORE to operate a commercial motor vehicle of any type, including the subject tractor-trailer rig, in force, expired, or revoked by the issuing authority.

RESPONSE:

15. Any and all documents reflecting correspondence between Defendants and any issuing authority for an operator and/or commercial driver's license for motor vehicles for EDMOND JOE PALMORE, within the last five (5) years of January 30, 2016.

RESPONSE:

16. Any and all reports or forms requested or required, by the P.A.M. Defendants, to be completed by EDMOND JOE PALMORE within the course of his/her employment with Defendants.

RESPONSE:

17. The daily log book or books prepared, kept or maintained by EDMOND JOE PALMORE, during the six (6) months preceding the date of the accident made the basis of this lawsuit, through and including the date of the accident on January 30, 2016.

RESPONSE:

18. Any and all documents relating to the tractor-trailer rig Defendant EDMOND JOE PALMORE was operating, including, but not limited to, acquisition papers, registrations and leasing documents, repair and/or service orders, invoices or reports.

RESPONSE:

19. Any and all photograph's, videos, motion pictures or other tangible evidence of Defendants' tractor-trailer rig, Plaintiff's vehicle, and any other vehicle which was involved in the accident that made the basis of this suit.

RESPONSE:

20. Any and all photographs, videos, motion pictures or other tangible photographic representations of ALEXIS RENEE GUARDADO and/or her vehicle involved in the subject collision.

RESPONSE:

21.   Any and all drawings, photographs, pictures or other tangible evidence of the scene where the subject collision occurred.

RESPONSE:

22.   Any and all testing results regarding EDMOND JOE PALMORE, pursuant to the post-accident testing requirement set forth in Section 382.303 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

23.   Any and all testing results regarding EDMOND JOE PALMORE, pursuant to the requirement set forth in Section 382.301 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

24.   Any and all documents or records concerning EDMOND JOE PALMORE, pursuant to Sections 395.1 through 395.15 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

25.   Any and all accident reports, investigation reports or any other type of reports or documents prepared in the ordinary course of Defendants' business that record, reflect and/or relate, in whole or in part, to the accident that made the basis of this lawsuit.

RESPONSE:

26.   Any and all reports by Defendants or its employees to others of "reportable accidents" (as that term is defined in Section 390.5 and 390.15 of the Federal Motor Carrier Safety Regulations) involving EDMOND JOE PALMORE.

RESPONSE:

27.   Any and all reports of violations furnished by EDMOND JOE PALMORE, with any motor carrier at any time in compliance with Section 391.27 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

28.   Any and all recordings by tachograph or speedograph or other recording devices reflecting the information about the operation of the tractor-trailer rig in question including, but not limited to, information about the date, time, and rate of speed of the vehicle in question, within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit.

RESPONSE:

29. Any and all documents related to EDMOND JOE PALMORE's trip that immediately preceded, and included, January 30, 2016, including, but not limited to, bills of lading, manifests and other documents relating to the vehicle in question and the contents of the load being hauled.

RESPONSE:

30. Please produce complete and clearly readable copies of all inspection reports (during one year preceding the date of the accident and the date of the accident) for all inspections performed on the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit.

RESPONSE:

31. Please produce a complete and clearly readable copy of any and all Certificates of Title to the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

RESPONSE:

32. Please produce a complete and clearly readable copy of the Owner's Manual for the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

RESPONSE:

33. Please produce a complete and readable copy of the Maintenance Record and/or other documents regarding the maintenance and/or repairs of the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

RESPONSE:

34. Please produce a complete and clearly readable copy of any and all contracts and/or agreements pertaining to the use of the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit, from December 30, 2015 to January 30, 2016.

RESPONSE:

35. Please produce a complete and clearly readable copy of any and all tachometer records from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the

incident that made the basis of this lawsuit, from December 30, 2015 to January 30, 2016.

RESPONSE:

36.     Please produce a complete and clearly readable copy of any and all on-board computer records from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit, for a 24 hour period preceding and including up to the end of the collision, or the final resting position, of the collision that made the basis of this suit. This includes, but is not limited to, emails, dispatch records, GPS data or transmissions or documents of any type, including all electronically-stored information.

RESPONSE:

37.     Please produce a complete and clearly readable copy of any and all dispatch records (in your possession) from the truck EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit, from December 30, 2015 to and including midnight January 31, 2016.

RESPONSE:

38.     Please produce a complete and clearly readable copy of any and all mobile radio records (in your possession) from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of the lawsuit, within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit, and to midnight January 31, 2016.

RESPONSE:

39.     Please produce a complete and clearly readable copy of any and all licenses for the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

RESPONSE:

40.     Please produce a complete and clearly readable copy of the registration documents pertaining to the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of the lawsuit.

RESPONSE:

41.     Please produce a complete and clearly readable copy of any and all out-of-service orders pertaining to the truck EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit, from January 30, 2015 to January 30, 2016.

RESPONSE:

42.  Please produce a complete and clearly readable copy of any and all National Transportation Safety Board and Interstate Commerce Commission (ICC), Department of transportation (DOT), Department of Public Safety (DPS), local police departments, fire departments, and/or EMS investigative reports pertaining to and/or involving the tractor-trailer rig EDMOND JOE PALMORE was driving and/or the persons injured or killed at the time to of the incident that made the basis of this lawsuit.

RESPONSE:

43.  Please produce complete and clearly readable copies of your company's manuals covering truck safety, maintenance, fleet safety programs and driver's standards. This request includes documents relating to any of the following topics: defensive driving; driving in inclement weather; following distances; space management; speed; fatigue; stopping distance; night driving; accident reporting; accident investigation; and driver's rates of pay, all of which were used to a) train EDMOND JOE PALMORE and b) that were in effect on January 30, 2016.

RESPONSE:

44.  Please produce complete and clearly readable copies of any and all accident reconstruction reports, including all drafts, raw data, diagrams, charts, underlying documentation, photographs, videotapes, audiotapes, film, movies, or any other intelligible information or documents collected to conduct such accident reconstruction of the incident that made the basis of this lawsuit.

RESPONSE:

45.  Please produce any and all photographs, videotapes, audiotapes, film, movies, diagrams, charts, or any other intelligible information or documents collected at any type of examination, demonstration, reenactment, or inspection of the scene and/or the vehicles or persons involved in the incident made the basis of this lawsuit.

RESPONSE:

46.  Any and all documents reflecting Defendants' procedures for communication between Defendants and EDMOND JOE PALMORE while he was hauling loads for Defendants.

RESPONSE:

47.  Any and all documents reflecting Defendants' procedures for determining work schedule and/or dispatch orders for EDMOND JOE PALMORE.

RESPONSE:

48.   Any and all of the records of duty, status, or daily logs filed by EDMOND JOE PALMORE with Defendants since his employment with Defendants.

RESPONSE:

49.   Any and all traffic citations issued to EDMOND JOE PALMORE, or any other document evidencing, in whole or in part, any violations, tickets, citations or infractions by the Texas Department of Public Safety or any other state or federal authority, whether or not he was driving and operating a vehicle owned by Defendant, at any time prior to, and including, January 30, 2016.

RESPONSE:

50.   Any and all manuals and other documents given by Defendants to EDMOND JOE PALMORE, reflecting its rules and procedures for operation of its tractor-trailer rigs.

RESPONSE:

51.   Any and all manuals and other documents given by Defendants for the orientation of new drivers at the commencement of their relationship with EDMOND JOE PALMORE.

RESPONSE:

52.   Any and all training manuals or any other types of documents or writings dealing, in whole or in part, with the training of EDMOND JOE PALMORE received while he was under the employment of Defendants.

RESPONSE:

53.   Any and all corporate policy and procedure manuals, corporate safety manuals, standard operating procedure manuals or any other types of manuals of Defendants, however titled or identified, which deal, in whole or in part, with safe driving practices and/or procedures to be followed by Defendants' employee drivers.

RESPONSE:

54.   Any and all safety meetings memoranda, notes, agendas, notices, log-in sheets, safety sheets, and other documents reflecting the occurrence of any and all safety meetings of Defendants for its drivers for the years 2012 – 2016.

RESPONSE:

55.   Any and all memoranda, notes, agendas, video tapes, audio tapes, study materials,

reference materials, books, brochures, pamphlets, hand-outs, and other documents made available to attendees and/or used by the instructors of any safety meetings of Defendants for its drivers for the years 2012 – 2016.

RESPOSNSE:

56. Any and all petitions, complaints or other documents evidencing any lawsuits which have been filed in any state or federal court of the United States against Defendants, by any person and at any time, in which injuries and/or damages have been alleged as a result of an accident or occurrence involving EDMOND JOE PALMORE. Alternatively, you may attach a list setting forth: (1) cause number of the lawsuit, style of the case and designating the court the action was filed in; (2) name and address of the attorney and the parties and the attorney representing each party; and (3) general nature of the allegations and damages each Plaintiff claimed to receive.

RESPONSE:

57. Any and all documents or records of any kind or nature evidencing complaints or claims of injuries or damages and the names, addresses and telephone numbers of all persons or entities who have contended injuries or damages as a result of a collision or occurrence involving EDMOND JOE PALMORE.

RESPONSE:

58. Any and all tax returns filed by Defendants for the tax years 2012 – 2016.

RESPONSE:

59. Any and all documents or records of any kind or nature evidencing Defendants' assets and/or net worth including, but not limited to, annual statements, financial statements, balance sheets, audited or unaudited reports, certified or otherwise, including exhibits, for the period 2012 – 2016.

RESPONSE:

60. Any and all documents, reports and records which the Defendants have filed regarding Defendants' or its subsidiaries with the Securities and Exchange commission including, but not limited to, 10-K reports and shareholder reports, including exhibits, for the period 2012 – 2016.

RESPONSE:

61. Any and all documents, reports, records, daily log books, log pages, or any other writings that reflect the numbers of hours, the time period, days, the miles, the routes, and the trips

that were driven by or worked by EDMOND JOE PALMORE, for the 30 days preceding the accident made the basis of this lawsuit, including the day of the collision in question.

RESPONSE:

62. Any and all cell phone records for the month of January 2016 for any cell phone provided by Defendants to EDMOND JOE PALMORE.

RESPONSE:

63. Any and all electronically or digitally stored GPS (Global Posting System) data pertaining to the tractor-trailer rig owned by Defendants and involved in the accident that made the basis of this lawsuit, for a period of time within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit.. If electronic or digitally stored data are not available, all available data stored via alternative format, including, but not limited to, paper records, photocopies of paper records or scanned images of paper records or printouts.

RESPONSE:

64. Any and all documents maintained or retained in the "driver investigation history file," maintained by Defendants, as required by Section 391.53 of the Federal Motor Carrier Safety Regulations.

RESPONSE:

65. All documents that record, reflect or relate to equipping the tractor-trailer rig, in this case, with any collision warning systems (CWS). If not such CWS was installed on the subject tractor-trailer rig, at any time prior to the subject collision, then please produce any and all documents in Defendants' actual or constructive possession, that records, reflects or relates to Defendants' consideration and/or decision making process in leading up to, and including, the decision by Defendants NOT to install such CWS on the subject tractor-trailer rig, including proposals, cost analysis, emails, accounting records, marketing records, safety records and any other documents, used by Defendants, in connection with any such cost/benefit analysis regarding such systems.

RESPONSE:

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS P.A.M. TRANSPORT, INC. and P.A.M. TRANSPORTATION SERVICES, INC.

Plaintiffs, pursuant to Rule 197, Texas Rules of Civil Procedure, propounds this First Set of Interrogatories to Defendants P.A.M. TRANSPORT, INC. and P.A.M. TRANSPORTATION

SERVICES, INC. You are hereby directed to answer the following written interrogatories separately and fully, in writing and under oath, in accordance with Texas Rules of Civil Procedure, having the answers signed by the person making them and serving a true copy of the answers on the undersigned attorney within 50 days after service hereof.

## DEFINITIONS AND INSTRUCTIONS

These interrogatories shall be deemed continuing, and supplemental answers shall be required if Defendants, or their attorney, either directly or indirectly, obtain further information of the nature sought herein between the time answers are served and the time of trial.

a.  "You" or "your," as those words are used herein refer to Defendants, P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC. , and its agents, servants, employees, representatives, or anyone else working or acting in his behalf, whether authorized to do so or not.

b.  The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative entity, or any private entity, or any person.

A document is deemed to be in your possession, custody or control if you have either actual physical possession of a document or constructive possession of the document. Constructive possession means that you have a superior right to compel the production of such document or a copy thereof from a third party having actual physical possession of the document.

The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings);

purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

c.     "Person": The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

d.     "Identify" or "Identification":

(1)     When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(2)     When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its chief executive officer and telephone number.

(3)     When used in reference to a document, "identify" or "identification" shall include statement of the following:

- (a)     the title, heading, or caption, if any, of such document;

- (b)     the identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

- (c)     the date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate date on which such document was prepared;

- (d)     the number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.), with sufficient particularity so as to enable such document to be precisely identified;

    (e)    the name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

    (f)    the name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

    (g)    the physical location of the document and the name of its custodian or custodians.

(4)    Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.

e.    "Settlement:," as used herein, means an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, "arrangement, "deal", "understanding," loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiffs and any defendants or between any defendants herein whereby plaintiffs or defendant(s) have in any way released compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein.

The term "settlement" is also meant to include any resolution of the differences between the plaintiffs and defendant(s) by loan to the plaintiffs or any other device which is repayable in whole or in part out of any judgment the plaintiffs may recover against defendant(s).

The term "settlement" shall also include "Mary Carter Agreements" as that term is used under Texas Law.

## INTERROGATORIES TO DEFENDANTS
## P.A.M. TRANSPORT, INC. AND P.A.M. TRANSPORTATION SERVICES, INC.

**INTERROGATORY NO. 1:** Please state the full name, address, telephone number, job title, and job description of all persons answering or providing information used in answering these interrogatories.

## ANSWER:

**INTERROGATORY NO. 2:** Identify the name and address of each potential party to this lawsuit, not already a party hereto.

**ANSWER:**

**INTERROGATORY NO. 3:** Was Defendant, EDMOND JOE PALMORE, employed by you at the time of the collision made the basis of this suit? If not, please provide the name and address of the individual or entity you contend was Defendant EDMOND JOE PALMORE'S employer at the time this incident occurred.

**ANSWER:**

**INTERROGATORY NO. 4:** Please state in detail your understanding of how the collision occurred, and the name, address, phone number, job title, and job description of all persons, excluding your attorneys, who provided or recorded information upon which you have relied in answering this interrogatory.

**ANSWER:**

**INTERROGATORY NO. 5:** Please identify by name, address and telephone number each person who witnessed the accident.

**ANSWER:**

**INTERROGATORY NO. 6:** Was the tractor-trailer rig, in this case, equipped with any collision warning systems (CWS)? If not, why not? Has your company ever considered utilizing such systems and have you performed any cost/benefit analysis regarding such systems?

**ANSWER:**

**INTERROGATORY NO. 7:** Please provide the date and circumstances surrounding all vehicular accidents, Defendant EDMOND JOE PALMORE has been involved in, and any moving violations (or traffic citations) received by EDMOND JOE PALMORE, while he was/is employed by you or driving on your behalf, as well as all vehicular accidents and moving violations/traffic citations you have knowledge of prior to his involvement with your company.

**ANSWER:**

Plaintiffs' Original Petition and Discovery Requests -                                              24

**INTERROGATORY NO. 8:** State the names of all insurance companies who had primary or excess (umbrella) insurance coverage in effect on the date(s) of the incident(s) made the basis of the Plaintiff's claims against you and the policy number(s), amount(s) or limit(s) of coverage which you contend apply to such incident(s).

    (a)    If any coverage limit is an aggregate limit, please state whether such limit has been reduced by any other claims and, if so, the amount of such reduction.

    (b)    If any deductible or self-insured retention applies, please state the amount of same.

### ANSWER:

**INTERROGATORY NO. 9:** If you have made repairs to the vehicular damage which resulted from this occurrence, please provide:

    a.   The name and address of the person or company who made such repairs; and

    b.   The itemized cost of such repairs.

### ANSWER:

**INTERROGATORY NO. 10:** Did one or both P.A.M. Defendants own or lease the tractor and trailer at issue in this case? If the tractor and/or trailer was/were leased, please provide the name, address, and phone number of the company from whom you leased the tractor and/or trailer, as well as the company you understand may own the tractor and/or trailer.

### ANSWER:

**INTERROGATORY NO. 11:** Please provide the points of origin and destination of EDMOND JOE PALMORE on the route he was driving when this collision occurred, the time he began work and ceased work for the 24 hour period before this collision, and the number of miles he traveled the 24 hour period before this collision.

### ANSWER:

**INTERROGATORY NO. 12:** Please describe the average number of hours EDMOND JOE PALMORE would drive in an average week for 30 days prior to this collision.

### ANSWER:

**INTERROGATORY NO. 13:** Please list all complaints, reprimands, or any other disciplinary action(s), formal or informal, you know of regarding EDMOND JOE PALMORE whether employed by you or any other company.

**ANSWER:**


**INTERROGATORY NO. 14:** Do you require drivers you employ to carry cameras, accident kits, exoneration cards, or other similar materials in their vehicles in the event of an accident? If so, please specifically describe and inventory the contents of such kits and/or items, including such items in the possession of EDMOND JOE PALMORE, at the time of the subject collision.

**ANSWER:**


**INTERROGATORY NO. 15:** Please detail all actions taken by your company in investigating the background of EDMOND JOE PALMORE prior to hiring and/or retaining his services. Include the name, address, and phone number of any/all references and former/previous employers contacted and any such other actions you took, as required by the Federal Motor Carrier Safety Regulations.

**ANSWER:**


**INTERROGATORY NO. 16:** Please describe any and all training or education in driving tractor-trailer rigs provided to EDMOND JOE PALMORE, whether by your company or any other person or entity. Please provide the dates of such training or education, enumerate the certifications received by EDMOND JOE PALMORE, and indicate whether EDMOND JOE PALMORE required more than one attempt to pass any testing associated with such training. If not, please detail all education and training you are aware EDMOND JOE PALMORE received from any other facility or company.

**ANSWER:**


**INTERROGATORY NO. 17:** Please describe all repairs that had been performed on the tractor and trailer EDMOND JOE PALMORE was driving in the year prior to this accident occurring, including the name of all facilities that had inspected and/or worked on the tractor and trailer at issue in this case.

**ANSWER:**

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT EDMOND JOE PALMORE

Plaintiffs, pursuant to Rule 197, Texas Rules of Civil Procedure, propounds this First Set of Interrogatories to Defendant EDMOND JOE PALMORE. You are hereby directed to answer the following written interrogatories separately and fully, in writing and under oath, in accordance with Texas Rules of Civil Procedure, having the answers signed by the person making them and serving a true copy of the answers on the undersigned attorney within 50 days after service hereof.

## DEFINITIONS AND INSTRUCTIONS

These interrogatories shall be deemed continuing, and supplemental answers shall be required if Defendants, or their attorney, either directly or indirectly, obtain further information of the nature sought herein between the time answers are served and the time of trial.

a. "You" or "your," as those words are used herein refer to Defendant, EDMOND JOE PALMORE, and its agents, servants, employees, representatives, or anyone else working or acting in his behalf, whether authorized to do so or not.

b. The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative entity, or any private entity, or any person.

A document is deemed to be in your possession, custody or control if you have either actual physical possession of a document or constructive possession of the document. Constructive possession means that you have a superior right to compel the production of such document or a copy thereof from a third party having actual physical possession of the document.

The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries,

Plaintiffs' Original Petition and Discovery Requests -                                    27

drafts; files; guaranty agreements; instructions; invoices; ledgers, journals balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

c.    "Person": The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

d.    "Identify" or "Identification":

(1)    When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(2)    When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its chief executive officer and telephone number.

(3)    When used in reference to a document, "identify" or "identification" shall include statement of the following:

(a)    the title, heading, or caption, if any, of such document;

(b)    the identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

(c)    the date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate

date on which such document was prepared;

- (d) the number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.), with sufficient particularity so as to enable such document to be precisely identified;

- (e) the name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

- (f) the name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

- (g) the physical location of the document and the name of its custodian or custodians.

(4) Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.

e. "Settlement:," as used herein, means an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, "arrangement, "deal", "understanding," loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiffs and any defendants or between any defendants herein whereby plaintiffs or defendant(s) have in any way released compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein.

The term "settlement" is also meant to include any resolution of the differences between the plaintiffs and defendant(s) by loan to the plaintiffs or any other device which is repayable in whole or in part out of any judgment the plaintiffs may recover against defendant(s).

The term "settlement" shall also include "Mary Carter Agreements" as that term is used under Texas Law.

## INTERROGATORIES TO EDMOND JOE PALMORE

1. Please identify yourself, including the following:

   (a) your full name, present street address and present mailing address (if different from your street address);

   (b) your date and place of birth;

   (c) any and all other names you have gone by in your lifetime, including any nicknames or aliases;

   (d) your driver's license number(s) (or state I.D. number(s), if no license(s));

   (e) your Social Security number;

   (f) all street addresses you have lived at within the last ten (10) years, including the dates you resided at each address; and,

   **ANSWER:**

2. For each individual or entity who has employed you and/or retained your services, as the operator or any commercial vehicle, including, but not limited to, tractor-trailer rigs, please provide:

   (1) his/her/its name, address and telephone number;

   (2) your job title(s) while employed by or for the employer and, if your job duties or title changed during your tenure with such employer, the circumstances of any such job duties or title change;

   (3) your supervisor(s);

   (4) the period(s) of your employment;

   (5) all verbal or written, formal or informal warnings, reprimands or other negative supervisory responses to your job performance, your behavior in the workplace, or any other aspect of your employment by or for your employer; and,

   (6) the circumstances of your termination from each such employment. NOTE: "Employed," "employer" and "employment" should be liberally construed to include all situations involving an exchange of money or other valuable consideration for services rendered or

> goods provided by you to another individual or entity, including independent contracting situations as well as "traditional" employer-employee relationships.

**ANSWER:**

3. Have you ever received a verbal or written, formal or informal warning, reprimand, citation, or other negative response to your driving, regardless of the source of the warning, reprimand or other negative response (e.g., employer, law enforcement agency, Department of Transportation, etc.)? For each of these warnings, reprimands, citations or other negative responses to your driving, please identify all locations, dates, times, employers, third-parties, etc. relevant to rendering a full exposition of the facts, circumstances and results of same.

**ANSWER:**

4. Please describe your complete driving record for the ten (10) years preceding the date of the subject collision, and for each and every citation you have received, please state:

   (a)    the offense(s) you were alleged to have committed and/or with which you were charged;

   (b)    the date, city, county, and state on/in which you were cited;

   (c)    how (e.g., "guilty," "no contest" or "not guilty"), when and where you responded to the charge(s); and,

   (d)    the disposition of the charge(s).

**ANSWER:**

5. If you had [a] current driver's license(s) at the time of the subject occurrence, please identify the state(s) issuing such license(s), the expiration date(s) thereof, the nature of any restrictions thereon, and the basis of any such restrictions (e.g., physical disability, prior finding of guilt in a court proceeding, etc.).

**ANSWER:**

6. Has/have your driver's license(s) ever been probated, suspended, revoked or otherwise surrendered voluntarily or involuntarily in Alabama or any other state? If so, please identify and describe the place, date and basis of each such probation, suspension,

revocation or surrender, as well as the circumstances and results of any and all legal and/or extra-judicial proceedings of or concerning same.

**ANSWER:**

7.  Please list all traffic accidents in which you have been involved, as a driver, including the date, location, city, county, state, investigating agency, and any violations for which you were cited in connection with any such traffic accidents.

**ANSWER:**

8.  Describe any criminal record you may have, including the nature of the charge, date and place of arrest and conviction, if any, and the ultimate disposition of any such charge or conviction.

> NOTE: You are asked to provide *all* responsive information, regardless of whether such information will be deemed admissible (under Tex. R. Evid. 609) upon the trial of this cause.

**ANSWER:**

9.  Please describe fully any and all investigations of the incident made the basis of this lawsuit, all inspections of the site of the incident in question and any instrumentalities involved or implicated therein, and any simulation studies, experiments, reconstructions or tests relevant to this lawsuit, other than those that are privileged by law. Please describe who conducted the investigation or inspection, including the name, address, occupation, and employer of each investigator or inspector, when the investigation or inspection was conducted and the results, findings or conclusions of said investigation or inspection.

> NOTE: If you are claiming privilege as to any investigation or inspection, based on its allegedly being done in anticipation of litigation, describe specifically what you are relying on to establish that you had reason to believe the litigation would ensue and provide a privilege log as required by the Texas Rules of Civil Procedure.

**ANSWER:**

10. Please state the name, address, and telephone number of any person who is expected to be called to testify at the trial of this cause. *Tex. R. Civ. P. 192.3(d).*

**ANSWER:**

11. Further to your disclosures made pursuant to Tex. R. Civ. P. 194.2(c), describe in your own words how, where, when and at what speed the subject collision occurred and state specifically and in detail what your claim or contention will be regarding any cause or contributing cause of the collision, including a statement in detail of the facts or information upon which this contention is based. *Tex. R. Civ. P. 192.3(j)* ("any party may obtain discovery of any other party's legal contentions and the factual bases for those contentions").

**ANSWER:**

12. Describe any information you have indicating, or any reason you have to believe, that there was any defect or failure on the part of any vehicle, or traffic control equipment involved in the collision. *Tex. R. Civ. P. 192.3(j)* ("any party may obtain discovery of any other party's legal contentions and the factual bases for those contentions").

**ANSWER:**

**13.**    Did you ingest, inject, inhale or otherwise use intoxicating beverages or prescription or nonprescription drugs, of any variety and in any amount, during the twenty-four hours preceding the accident in question? If so, *with respect to intoxicating beverages,* state the names, street addresses and locations of those public or private places where you drank, the type of liquor or beverage you were drinking, the number of drinks consumed, and specify the time period(s) in which such beverages were consumed by you. If so, *with respect to prescription drugs,* state in detail the type, dosage, where the prescription was obtained, the condition for which the drug was being taken, and the time of said use. If so, *with respect to non-prescription or illicit drugs,* state the type, concentration/strength, quantity taken and time of said use.

> NOTE: "Drugs" would include any type of drugs, medications, analgesics, antibiotics, powders, hallucinogens, depressants, relaxants, stimulants or any other reactive substance of a related nature.

**ANSWER:**

**14.**    Please state whether or not there are any audio recordings, photographs, films, movies, videotapes or other electronic images taken by you, Defendant(s) or its/their agents, servants, employees or representatives or otherwise within Defendant('s') possession, custody or control, as a result of or in connection with the incident made the basis of this lawsuit.

**ANSWER:**

**15.**    Please identify all radio, cell phone or pager communication that you possessed at the time of the subject collision. Please include the phone number or call sign for the unit(s) you controlled, the service provider and the provider or owner of such service

**ANSWER:**

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, EDMOND JOE PALMORE

Pursuant to Rule 196, Texas Rules of Civil Procedure, Plaintiffs serve the following Request for Production to EDMOND JOE PALMORE (hereinafter "Defendant"). These requests are being served upon the Defendant along with Plaintiffs' Original Petition. Defendant's responses shall be served upon Plaintiffs' counsel on or before the expiration of fifty

Plaintiffs' Original Petition and Discovery Requests -                                                                                   34

(50) days after the service of said discovery requests.

The Requests for Production are to be answered separately and fully in writing. You are further advised that you are under a duty to seasonably supplement you answers and/or responses in accordance with the Texas Rules of Civil Procedure.

**YOU ARE INSTRUCTED THAT IF ANY INFORMATION RESPONSIVE TO THESE REQUESTS IS STORED OR MAINTAINED BY YOU OR ANYONE FROM WHOM YOU HAVE A RIGHT OR ACCESS TO THE INFORMATION, ELECTRONICALLY OR MAGNETICALLY, YOU MUST PRODUCE THIS INFORMATION TO USE ON A DISC FORMATTED FOR MICROSOFT WORD.**

**NOTICE**

**PURSUANT TO RULE 193.7 OF THE TEXAS RULES OF CIVIL PROCEDURE, ANY DOCUMENTS PRODUCED BY YOU MAY BE USED IN ANY PRETRIAL PROCEEDING OR AT TRIAL. YOUR PRODUCTION OF ANY DOCUMETNS, IN RESPONSE TO ANY REQUEST HEREIN, AUTHENTICATES THE DOCUMENT(S) FOR USE AGAINST YOU IN ANY PRETRIAL PROCEEDING OR AT TRIAL UNLESS, WITHIN TEN (10) DAYS AFTER OUR RECEIPT OF YOUR RESPONSES (INCLUDING SUPPLEMENTAL OR AMENDED RESPONSES) YOU OBJECT TO THE AUTHENTICITY OF ANY DOCUMENTS PRODUCED, OR ANY PART THEREOF, STATING THE SPECIFIC BASIS FOR THE OBJECTION.**

## DEFINITIONS AND INSTRUCTIONS

1. "DOCUMENTS." When the word "document(s)" or "documentation" is used in these discovery requests, it means any written, typed, printed, graphic or photographic matter, or sound reproductions however produced or reproduced, including copies of computer or data processing, input or output in whatever form, including electronic and magnetic data. Without limiting the generality of the foregoing, all letters, telegrams, cables, wires, notes, memoranda, accounts, ledgers, books, statements, drafts, transcripts, agreements, contracts, policies, minutes, records, diaries, journals, logs, manuals, calendars, governmental forms, computer or data processing input or output, maps, plats, moving or still pictures, diagrams, plans, drawings, specifications, measurements, microfilm, written statements or reports, e-mail reduced to hard copy, samples or other physical objects of whatever nature now or formerly in the possession, custody or control of the party to whom these Discovery Requests are directed.

> (e) The terms "writing" or "written" are intended to include, but not necessarily be limited to the following; hand writing, typewriting, computer printouts, printing, photographing, e-mail reduced to hard copy, and every other means of recording upon any tangible thing or any form of communication, including letters, words, pictures, sounds or symbols or combinations thereof; and it

further includes any oral communications later reduced to writing or confirmed by a letter.

(f) Whenever the identification of documents or objects is called for in these discovery requests, the party to whom these discovery requests are directed, shall provide the date of the document, model and serial number of the object, if any, the brand of the object, name of manufacturer and date of manufacture. In lieu of identification as stated above, Defendant may produce for inspection and copying such documents or objects and/or manuals identifying such objects.

(g) With regard to documents requested to be produced, please produce the original of said documents for inspection and copying or provide complete and clear legible copies of same with immediate opportunity to review the originals.

(h) If the party to whom these interrogatories and requests are directed contend that the content of a document of the answer to an interrogatory is protected from disclosure by virtue or a privilege, or if the party objects to such discovery on any other grounds, it is intended and requested that the party shall, nevertheless, with respect to such document or answer requested, provide a description thereof, including:

(9) A statement of the privilege or objection whereby they contend that such discovery is protected from disclosure;

(10)      Each every fact upon which they rely to support such claim of privilege or objection;

(11)      The type of document (e.g., letter, memorandum, telegraph, telefax, note);

(12)      The date of each such document or writing;

(13)      The author of each such document or writing;

(14)      The person or persons to whom each such writing or document was directed;

(15)      The person or persons to whom each such writing or document was supplied; and

(16)      The general subject matter of each such document or writing.

3. "IDENTITY" "IDENTIFY" or "IDENTIFICATION";

(d) When used in reference to a natural person, "identity" "identify" or "identification" means to state his or her full name and present or last known address, present employer (if employed by the party to who this Discovery is directed, then identify the particular organization for whom he or she

worked), present employer, specifying in each instance the title or position and the dates so held.

(e) When used with respect to a document, "identity", identify" or "identification" means to state the date, subject and substance, author all recipients, type of document (e.g., letter, telegraph, memorandum, computer printout, sound reproduction, chart, etc.), its present location and the identity of its present custodian. This shall include documents with respect to which a privilege is or may be claimed, if such document was, but no longer is, in your possession or subject to your control, state whether it is (1) missing or lost; (2) has been destroyed; (3) has been transferred voluntarily to others; or (4) has been otherwise disposed of. In each such instance explain the circumstances surrounding an authorization for such disposition.

(f) When used with respect to an occasion, event, meeting or conversation, "identity", "identify" or "identification" means to state the date, place, duration and persons attending or participating.

3. "Person" or "persons" includes natural persons, including agents, servants and/or employees of this Defendant, firms, partnerships, associations, joint ventures, corporation and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

4. "YOU" or " YOUR" means EDMOND JOE PALMORE and shall include any and all officers, directors, employees, servants, agents, contract laborers, and any Parent company, division, subsidiary, assumed name, business unit, successor entity or any entity under the direction or control of EDMOND JOE PALMORE.

5. "ACCIDENT," "THE INCIDENT" or "THE OCCURRENCE IN QUESTION" means the incident made the basis of this lawsuit that occurred on or about January 30, 2016 as more fully set out in PLAINTIFFS' ORIGINAL PETITION.

6. "THIS SUIT," "THIS LAWSUIT," or "THE LAWSUIT" shall mean the lawsuit referenced in the above-entitled and numbered cause.

In the event that your answer to any discovery request is "not applicable" or any similar phrase or answer, please explain in detail why that discovery request is not applicable.

In the event that your answer to any discovery request is "don't know" or "unknown" or any similar phrase or answer, please explain in detail all efforts made by your or your attorneys or representatives to obtain the response to that discovery request.

When a discovery request asks that your or your attorney provide information concerning

what witness may testify about, that request is intended to elicit a summary of any and all information that any witness may have provided to your regardless of whether they may so testify at trial.

These discovery requests should be deemed continuing in nature and you are requested to update your responses periodically to reflect any information obtained after the discovery requests are initially responded to, to include all information up to, and including, the date of trial in this action, in accordance with the Texas Rules of Civil Procedure.

Unless otherwise stated, answers to these Requests for Production shall be given for the time period ending with the date answers or responses hereto are served. To the extent that such answers or responses hereto are served. To the extent that such answers or responses may be enlarged, diminished or otherwise modified by information acquired or discovered by you subsequent to service of initial answers or responses, you are directed to promptly thereafter serve supplemental answers or responses reflecting such information.

You are further notified that your answers to these Requests for Production may be offered in evidence at the trial of this case. You are further advised that your answers or responses to these requests must be supplemented (not less than 30 days prior to the beginning of the trial) when you obtain information upon the basis of which:

(4) You know an answer or response was incorrect when made or incomplete when made;

(5) You know that the answer or response, though correct when made, is no longer true and complete, and the circumstances are such that to fail to amend your answers ore responses would be, in substance, misleading; or

(6) If the party expects to call an expert witness whose identity and subject matter of such witness' testimony has not been previously disclosed in response to an appropriate discovery request, such answer must be supplemented and/or amended to include the name, address and telephone number of the expert witness and the substance of the expert witness' expected testimony. This should be done as soon as practical, but in no event less than thirty (30) says prior to the beginning of trial except for good cause granted by leave of Court.

7.     Driver: As used herein, the term "Driver or Drivers" means any person employed, or contracted for or with, by Defendant, including EDMOND JOE PALMORE and persons known as co-drivers, independent contractors, owner operators or trip lessors and includes persons furnished to the Defendant and drivers by any other person or organization who perform driving services for or on behalf of EDMOND JOE PALMORE

8.     Complete and Clearly Readable Copies: As used herein, the terms "Complete and clearly readable copies" means copies that are not reduced in size, unless the document being

copied exceeds the size of normally available copy paper, and is a complete copy of the document clearly readable to the average person. Plaintiff's request that each document that is reproduced by copy methods to satisfy this request, be produced on one page (one document per page), separate and apart from all other documents produced. If the copies reproduced to satisfy any request herein are not clearly readable, Plaintiff's request the originals be produced for purposes of viewing and copying by the Plaintiff's. The originals will be timely returned to the producing defendant.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined hereinabove is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## REQUEST FOR PRODUCTION TO DEFENDANT
## EDMOND JOE PALMORE

1.  All documents, videotapes or recordings containing or summarizing any statement made by plaintiff as defined by the Federal Rules of Civil Procedure.

## RESPONSE:

2.  All letters or correspondence that occurred prior to suit being filed between plaintiff and the defendant which relates to the subject matter of this lawsuit.

## RESPONSE:

3.  All documents, photographs, videotapes, tape recordings, slides or films relating to any surveillance of the plaintiff.

## RESPONSE:

4.  Any photographs, films, videotapes, tape recordings, drawings, and diagrams that relate to the subject matter of this lawsuit.

## RESPONSE:

5.  All reports, photographs, videotapes, tape recordings, and other documentary information from anyone who was not directed by the defendant to investigate or research the subject collision.

## RESPONSE:

6.  All reports, photographs, videotapes, tape recordings, and other documentary information

from anyone who <u>was directed</u> by the defendant to investigate or research the subject collision prior to the date this lawsuit was filed.

### RESPONSE:

7.    A copy of Defendant's driver's license.

### RESPONSE:

8.    A copy of the title to the vehicle defendant was driving at the time of the collision made the basis of this lawsuit.

### RESPONSE:

9.    Any and all photographs that the defendant has of any vehicle involved in the accident in question following the collision.

### RESPONSE:

10.    A copy of any damage appraisal made of Defendant's tractor-trailer rig he was operating at the time of the collision in question.

### RESPONSE:

11.    Any and all drawings, maps or sketches of the scene of the accident which has been made the basis of this lawsuit.

### RESPONSE:

12.    A copy of any contract of employment that would govern the defendant's relationship with any other party or bear on the issue of course and scope of employment.

### RESPONSE:

13.    A copy of any cellular phone statements or billing records, from midnight, January 29, 2016 to midnight, January 31, 2016 which would reflect telephone calls either made by you or received by you on the date of the accident made the basis of this lawsuit.

### RESPONSE:

14.    Please execute and return the Application for Copy of Driver's Record.

### RESPONSE:

15.    Please execute and return the attached Cellular Telephone authorization.

**RESPONSE:**

16.  Your entire personnel file and its contents and/or any other personnel records of EDMOND JOE PALMORE, including, but not limited to, evaluations, testing, qualifications, driving records, pre-employment physicals, follow-up physicals, applications for employment, employment agreements and all other records, including records from other entities in their entirety.

**RESPONSE:**

17.  Any and all documents, writings, complaint forms, reprimand forms or any other types of documents that reflect any complaints or reprimands relating to EDMOND JOE PALMORE, at any time.

**RESPONSE:**

18.  Any and all documents, books, records and papers in the possession of the Defendant pertaining to the physical and mental health of EDMOND JOE PALMORE, including, but not limited to, any long-form physical examination, and/or D.O.T. physicals, done for any purpose in accordance with Section 391.41 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

19.  Any and all documents which reflect, in whole or in part, any alcohol or drug screening performed on EDMOND JOE PALMORE, at any time in the past.

**RESPONSE:**

20.  Any and all notices of convictions, if any, regarding EDMOND JOE PALMORE, that Defendant is expected and required to prepare and maintain pursuant to Section 383.31 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

21.  Any and all notices of driver's license suspensions, if any, regarding EDMOND JOE PALMORE, pursuant to Section 383.33 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

22.  Any and all employment information collected or retrieved by Defendant and/or provided to Defendant by EDMOND JOE PALMORE, pursuant to Section 383.35 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

23. Any and all contents of the "driver qualification file" for EDMOND JOE PALMORE, pursuant to Section 391.51 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

24. Any and all pre and post-employment tests, quizzes, evaluations and/or examinations that were given to or performed on EDMOND JOE PALMORE throughout his entire employment with Defendant.

**RESPONSE:**

25. Any and all documents reflecting, in whole or in part, any pre-employment testing, post-employment testing, quizzes, evaluations or examinations that were given to or performed on any of Defendant's employees within the past five (5) years. The term "employee" in this request means any person employed in the capacity of a truck driver for Defendant.

**RESPONSE:**

26. Any and all time cards, time logs, driver's daily logs and/or any other type of logs for EDMOND JOE PALMORE for the period December 30, 2015 to January 30, 2016.

**RESPONSE:**

27. Any and all documents reflecting compensation paid to EDMOND JOE PALMORE, by defendant for expense advanced in pursuit of its business for the period December 30, 2015 to January 30, 2016.

**RESPONSE:**

28. Any and all documents reflecting compensation paid to EDMOND JOE PALMORE for the period December 30, 2015 to January 30, 2016.

**RESPONSE:**

29. Any and all operator and/or commercial driver's licenses in the possession of Defendant issued at any time by any licensing authority permitting EDMOND JOE PALMORE to operate a commercial motor vehicle of any type, including the subject tractor-trailer rig, in force, expired, or revoked by the issuing authority.

**RESPONSE:**

30. Any and all documents reflecting correspondence between Defendants and any issuing

authority for an operator and/or commercial driver's license for motor vehicles for EDMOND JOE PALMORE, within the last five (5) years of January 30, 2016.

## RESPONSE:

31. Any and all reports or forms requested or required, by the P.A.M. Defendants, to be completed by EDMOND JOE PALMORE within the course of his/her employment with Defendants.

## RESPONSE:

32. The daily log book or books prepared, kept or maintained by EDMOND JOE PALMORE, during the six (6) months preceding the date of the accident made the basis of this lawsuit, through and including the date of the accident on January 30, 2016.

## RESPONSE:

33. Any and all documents relating to the tractor-trailer rig Defendant EDMOND JOE PALMORE was operating, including, but not limited to, acquisition papers, registrations and leasing documents, repair and/or service orders, invoices or reports.

## RESPONSE:

34. Any and all photograph's, videos, motion pictures or other tangible evidence of Defendants' tractor-trailer rig, Plaintiff's vehicle, and any other vehicle which was involved in the accident that made the basis of this suit.

## RESPONSE:

35. Any and all photographs, videos, motion pictures or other tangible photographic representations of ALEXIS RENEE GUARDADO and/or her vehicle involved in the subject collision.

## RESPONSE:

36. Any and all drawings, photographs, pictures or other tangible evidence of the scene where the subject collision occurred.

## RESPONSE:

37. Any and all testing results regarding EDMOND JOE PALMORE, pursuant to the post-accident testing requirement set forth in Section 382.303 of the Federal Motor Carrier Safety Regulations.

## RESPONSE:

Plaintiffs' Original Petition and Discovery Requests - 43

38.   Any and all testing results regarding EDMOND JOE PALMORE, pursuant to the requirement set forth in Section 382.301 of the Federal Motor Carrier Safety Regulations.

## RESPONSE:

39.   Any and all documents or records concerning EDMOND JOE PALMORE, pursuant to Sections 395.1 through 395.15 of the Federal Motor Carrier Safety Regulations.

## RESPONSE:

40.   Any and all accident reports, investigation reports or any other type of reports or documents prepared in the ordinary course of Defendants' business that record, reflect and/or relate, in whole or in part, to the accident that made the basis of this lawsuit.

## RESPONSE:

41.   Any and all reports by Defendants or its employees to others of "reportable accidents" (as that term is defined in Section 390.5 and 390.15 of the Federal Motor Carrier Safety Regulations) involving EDMOND JOE PALMORE.

## RESPONSE:

42.   Any and all reports of violations furnished by EDMOND JOE PALMORE, with any motor carrier at any time in compliance with Section 391.27 of the Federal Motor Carrier Safety Regulations.

## RESPONSE:

43.   Any and all recordings by tachograph or speedograph or other recording devices reflecting the information about the operation of the tractor-trailer rig in question including, but not limited to, information about the date, time, and rate of speed of the vehicle in question, within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit.

## RESPONSE:

44.   Any and all documents related to EDMOND JOE PALMORE's trip that immediately preceded, and included, January 30, 2016, including, but not limited to, bills of lading, manifests and other documents relating to the vehicle in question and the contents of the load being hauled.

## RESPONSE:

45.   Please produce complete and clearly readable copies of all inspection reports (during one

year preceding the date of the accident and the date of the accident) for all inspections performed on the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit.

**RESPONSE:**

46. Please produce a complete and clearly readable copy of any and all Certificates of Title to the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

**RESPONSE:**

47. Please produce a complete and clearly readable copy of the Owner's Manual for the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

**RESPONSE:**

48. Please produce a complete and readable copy of the Maintenance Record and/or other documents regarding the maintenance and/or repairs of the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

**RESPONSE:**

49. Please produce a complete and clearly readable copy of any and all contracts and/or agreements pertaining to the use of the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit, from December 30, 2015 to January 30, 2016.

**RESPONSE:**

50. Please produce a complete and clearly readable copy of any and all tachometer records from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit, from December 30, 2015 to January 30, 2016.

**RESPONSE:**

51. Please produce a complete and clearly readable copy of any and all on-board computer records from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit, for a 24 hour period preceding and including up to the end of the collision, or the final resting position, of the collision that made the basis of this suit. This includes, but is not limited to, emails, dispatch records, GPS data

or transmissions or documents of any type, including all electronically-stored information.

**RESPONSE:**

52.     Please produce a complete and clearly readable copy of any and all dispatch records (in your possession) from the truck EDMOND JOE PALMORE was driving at the time of the incident made the basis of this lawsuit, from December 30, 2015 to and including midnight January 31, 2016.

**RESPONSE:**

53.     Please produce a complete and clearly readable copy of any and all mobile radio records (in your possession) from the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of the lawsuit, within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit, and to midnight January 31, 2016.

**RESPONSE:**

54.     Please produce a complete and clearly readable copy of any and all licenses for the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit.

**RESPONSE:**

55.     Please produce a complete and clearly readable copy of the registration documents pertaining to the tractor-trailer rig EDMOND JOE PALMORE was driving at the time of the incident that made the basis of the lawsuit.

**RESPONSE:**

56.     Please produce a complete and clearly readable copy of any and all out-of-service orders pertaining to the truck EDMOND JOE PALMORE was driving at the time of the incident that made the basis of this lawsuit, from January 30, 2015 to January 30, 2016.

**RESPONSE:**

57.     Please produce a complete and clearly readable copy of any and all National Transportation Safety Board and Interstate Commerce Commission (ICC), Department of transportation (DOT), Department of Public Safety (DPS), local police departments, fire departments, and/or EMS investigative reports pertaining to and/or involving the tractor-trailer rig EDMOND JOE PALMORE was driving and/or the persons injured or killed at

the time to of the incident that made the basis of this lawsuit.

## RESPONSE:

58. Please produce complete and clearly readable copies of your company's manuals covering truck safety, maintenance, fleet safety programs and driver's standards. This request includes documents relating to any of the following topics: defensive driving; driving in inclement weather; following distances; space management; speed; fatigue; stopping distance; night driving; accident reporting; accident investigation; and driver's rates of pay, all of which were used to a) train EDMOND JOE PALMORE and b) that were in effect on January 30, 2016.

## RESPONSE:

59. Please produce complete and clearly readable copies of any and all accident reconstruction reports, including all drafts, raw data, diagrams, charts, underlying documentation, photographs, videotapes, audiotapes, film, movies, or any other intelligible information or documents collected to conduct such accident reconstruction of the incident that made the basis of this lawsuit.

## RESPONSE:

60. Please produce any and all photographs, videotapes, audiotapes, film, movies, diagrams, charts, or any other intelligible information or documents collected at any type of examination, demonstration, reenactment, or inspection of the scene and/or the vehicles or persons involved in the incident made the basis of this lawsuit.

## RESPONSE:

61. Any and all documents reflecting Defendants' procedures for communication between Defendants and EDMOND JOE PALMORE while he was hauling loads for Defendants.

## RESPONSE:

62. Any and all documents reflecting Defendants' procedures for determining work schedule and/or dispatch orders for EDMOND JOE PALMORE.

## RESPONSE:

63. Any and all of the records of duty, status, or daily logs filed by EDMOND JOE PALMORE with Defendants since his employment with Defendants.

## RESPONSE:

Plaintiffs' Original Petition and Discovery Requests -    47

64. Any and all traffic citations issued to EDMOND JOE PALMORE, or any other document evidencing, in whole or in part, any violations, tickets, citations or infractions by the Texas Department of Public Safety or any other state or federal authority, whether or not he was driving and operating a vehicle owned by Defendant, at any time prior to, and including, January 30, 2016.

## RESPONSE:

65. Any and all manuals and other documents given by Defendants to EDMOND JOE PALMORE, reflecting its rules and procedures for operation of its tractor-trailer rigs.

## RESPONSE:

66. Any and all manuals and other documents given by Defendants for the orientation of new drivers at the commencement of their relationship with EDMOND JOE PALMORE.

## RESPONSE:

67. Any and all training manuals or any other types of documents or writings dealing, in whole or in part, with the training of EDMOND JOE PALMORE received while he was under the employment of Defendants.

## RESPONSE:

68. Any and all corporate policy and procedure manuals, corporate safety manuals, standard operating procedure manuals or any other types of manuals of Defendant, however titled or identified, which deal, in whole or in part, with safe driving practices and/or procedures to be followed by Defendants' employee drivers.

## RESPONSE:

69. Any and all safety meetings memoranda, notes, agendas, notices, log-in sheets, safety sheets, and other documents reflecting the occurrence of any and all safety meetings of Defendant for its drivers for the years 2012 – 2016.

## RESPONSE:

70. Any and all memoranda, notes, agendas, video tapes, audio tapes, study materials, reference materials, books, brochures, pamphlets, hand-outs, and other documents made available to attendees and/or used by the instructors of any safety meetings of Defendant for its drivers for the years 2012 – 2016.

## RESPONSE:

71. Any and all petitions, complaints or other documents evidencing any lawsuits which have been filed in any state or federal court of the United States against Defendants, by any person and at any time, in which injuries and/or damages have been alleged as a result of an accident or occurrence involving EDMOND JOE PALMORE. Alternatively, you may attach a list setting forth: (1) cause number of the lawsuit, style of the case and designating the court the action was filed in; (2) name and address of the attorney and the parties and the attorney representing each party; and (3) general nature of the allegations and damages each Plaintiff claimed to receive.

## RESPONSE:

72. Any and all documents or records of any kind or nature evidencing complaints or claims of injuries or damages and the names, addresses and telephone numbers of all persons or entities who have contended injuries or damages as a result of a collision or occurrence involving EDMOND JOE PALMORE.

## RESPONSE:

73. Any and all tax returns filed by Defendants for the tax years 2012 – 2016.

## RESPONSE:

74. Any and all documents or records of any kind or nature evidencing Defendants' assets and/or net worth including, but not limited to, annual statements, financial statements, balance sheets, audited or unaudited reports, certified or otherwise, including exhibits, for the period 2012 – 2016.

## RESPONSE:

75. Any and all documents, reports and records which the Defendants have filed regarding Defendants' or its subsidiaries with the Securities and Exchange commission including, but not limited to, 10-K reports and shareholder reports, including exhibits, for the period 2012 – 2016.

## RESPONSE:

76. Any and all documents, reports, records, daily log books, log pages, or any other writings that reflect the numbers of hours, the time period, days, the miles, the routes, and the trips that were driven by or worked by EDMOND JOE PALMORE, for the 30 days preceding the accident made the basis of this lawsuit, including the day of the collision in question.

## RESPONSE:

77.    Any and all cell phone records for the month of January 2016 for any cell phone provided by Defendants to EDMOND JOE PALMORE.

**RESPONSE:**

78.    Any and all electronically or digitally stored GPS (Global Posting System) data pertaining to the tractor-trailer rig owned by Defendants and involved in the accident that made the basis of this lawsuit, for a period of time within and including a 24 hour period before and up to the conclusion of the collision that made the basis of this suit.. If electronic or digitally stored data are not available, all available data stored via alternative format, including, but not limited to, paper records, photocopies of paper records or scanned images of paper records or printouts.

**RESPONSE:**

79.    Any and all documents maintained or retained in the "driver investigation history file," maintained by Defendants, as required by Section 391.53 of the Federal Motor Carrier Safety Regulations.

**RESPONSE:**

80.    All documents that record, reflect or relate to equipping the tractor-trailer rig, in this case, with any collision warning systems (CWS). If not such CWS was installed on the subject tractor-trailer rig, at any time prior to the subject collision, then please produce any and all documents in Defendants' actual or constructive possession, that records, reflects or relates to Defendants' consideration and/or decision making process in leading up to, and including, the decision by Defendants NOT to install such CWS on the subject tractor-trailer rig, including proposals, cost analysis, emails, accounting records, marketing records, safety records and any other documents, used by Defendants, in connection with any such cost/benefit analysis regarding such systems.

**RESPONSE:**

## AUTHORIZATION FOR RELEASE OF CELLULAR TELEPHONE RECORDS

TO WHOM IT MAY CONCERN:

This authorization specifically allows the Law Office of Ferrer, Poirot & Wansbrough, or any of its agents or representative to obtain all information requested regarding the cellular telephone account and cellular telephone number below.

A copy of this authorization bearing my signature shall be as valid as the original.

Requested:    All bills and other account records showing information regarding calls made or received, text messages made or received, by EDMOND JOE PALMORE, from **midnight, January 29, 2016 to midnight January 30, 2016**, for the cellular telephone number listed below.

Provider: _____

Cellular phone number: _____

Name on Account: _____

User Name: _____

Signature: _____

Printed Name: _____

Date: _____

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of

_____, 2016.

_____

NOTARY PUBLIC IN AND FOR

THE STATE OF _____

FERRER, POIROT & WANSBROUGH

/s/ John T. Kirtley, III
JOHN T. KIRTLEY, III
Texas Bar No. 11534050
2603 Oak Lawn Avenue, Suite 300
P.O. Box 199109
Dallas, Texas 75219
(214) 521-4412
(214) 526-6026 Fax
jkirtley@lawyerworks.com
(Asst. molvera@lawyerworks.com)
**ATTORNEYS FOR PLAINTIFF**
**ANDRE GUARDADO**

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing was sent, pursuant to Rules 21 and/or 21a, Texas Rules of Civil Procedure, via electronic filing, fax, regular mail and/or priority receipt confirmation mail, on this 12th day of February 2016.

/s/John T. Kirtley, III
JOHN T. KIRTLEY, III



**STATE OF TEXAS**
**COUNTY OF DALLAS**  }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this 18th day of March, A.D., 2016.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By Cecilia Flores Deputy